Stanley **GOLDBLUM,**
**Plaintiff-Respondent,**

v.

**NATIONAL BROADCASTING
CORPORATION,**
**Defendant-Petitioner.**

**No. 78–2246.**

United States Court of Appeals,
Ninth Circuit.

Oct. 26, 1978.

As Amended Feb. 2, 1979.

Before HUFSTEDLER, GOODWIN, and KENNEDY, Circuit Judges.

KENNEDY, Circuit Judge:

Our opinion explains the circumstances in which this court issued the order of June 8, 1978 granting petitioner's application for emergency relief, and the reasons such relief was appropriate.

This action sought to enjoin the National Broadcasting Company (NBC) from broadcasting on its television network a well-publicized film entitled the "Billion Dollar Bubble." The complaint was filed in the United States District Court for the Central District of California on June 7, 1978, only slightly more than twenty-four hours before the time the telecast was scheduled, at 10:00 p. m. Eastern Daylight Time and 10:00 p. m. Pacific Daylight Time on June 8, 1978.

The "Billion Dollar Bubble" was based on events surrounding manipulations in an extensive securities and insurance fraud which caused the insolvency of the Equity Funding Corporation. The plaintiff (respondent here) is Stanley Goldblum, the former Executive Officer of the Equity Funding Corporation. He is presently serving a term of imprisonment under sentence of the United States district court for his participation in the Equity Funding fraud. The grounds upon which Goldblum sought to enjoin the scheduled broadcast were somewhat unclear in the complaint, but upon elaboration before this court respondent's contention was that the presentation would be an inaccurate and false portrayal of the Equity Funding incident and Goldblum's participation in it. He argued that the film would inflame public opinion against him, and jeopardize his release on parole, his right to trial by an impartial jury in any state or federal criminal action which might be brought against him in the future, and also his right to a fair trial in a pending civil matter involving the demise of Equity Funding. Goldblum alleged that the film, described by NBC as a "docudrama," used his name and that of Equity

John J. Hanson (argued), Los Angeles, Cal., for defendant-petitioner.

Steven J. Goldfisher (argued), Los Angeles, Cal., for plaintiff-respondent.

Funding Corporation but amounted to a fictional treatment of the subject matter.

On June 7 counsel for both parties appeared in district court. Based on respondent's complaint, the district judge ordered NBC to produce the motion picture on June 8, at 9:00 a. m. Pacific Daylight Time so that he could view it for "inaccuracies." When the hearing recommenced on the morning of June 8 counsel for NBC declined to produce the film, claiming that the order for its production infringed the broadcaster's first amendment rights. The trial court thereupon ordered counsel for NBC imprisoned until he submitted the film to the court.[1]

■ NBC filed a document styled "Emergency Petition for Mandamus" in this court and requested us to convene an emergency motions panel to consider that petition, as well as an oral request for an order to stay the action taken by the district court. We received the petitioner's application for emergency relief shortly after noon on June 8 and this panel convened to consider the case. Our jurisdiction to issue the order of June 8 which vacated the district court's orders and entered a stay is conferred by 28 U.S.C. § 1651.[2]

■ The express and sole purpose of the district court's order to submit the film for viewing by the court was to determine whether or not to issue an injunction suspending its broadcast. Necessarily, any such injunction would be a sweeping prior restraint of speech and, therefore, presumptively unconstitutional. *E. g., Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). Before our court, respondent Goldblum sought to establish that this broadcast might inflame both the public and parole authorities, thereby prejudicing his consideration for release from imprisonment. He contended also that the impact the film would have on potential jury selection in a pending civil suit involving Equity Funding and in any criminal action which might still be brought against him would deprive him of his right to a fair trial. We find no authority which is even a remote justification for issuance of a prior restraint on a theory that parole officials would somehow become inflamed by the contents of a communication or on a theory that a wholly speculative criminal prosecution might commence at some future date. Petitioner has not established

1. Although NBC may have initally stipulated to deliver the film for the district court's viewing, it thereafter withdrew from the stipulation. The exigent circumstances surrounding both events may have diverted the district court's attention from the constitutional basis for NBC's withdrawal. In opposition to NBC's petition for writ of mandate, Goldblum did not rely on a stipulation. His sole contention was that the court below had an absolute right to order production of the film. The case was argued on that basis, without complete transcripts of the proceedings below, and we address exclusively the issue of the court's power to order production.

2. Mandamus lies to correct an abuse of discretion. *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 383, 74 S.Ct. 145, 98 L.Ed. 106 (1953). Mandamus is also appropriate for the exercise of the "supervisory control of the District Courts . . . necessary to proper judicial administration," *La Buy v. Howes Leather Co.,* 352 U.S. 249, 259–60, 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957), and a petition for a writ of mandamus is "properly before [a] court on a substantial allegation of usurpation of power [involving] an issue of first impression . . . ." *Schlagenhauf v. Holder,* 379 U.S. 104, 111, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964). Here the

district judge's order to produce the film for inspection was interlocutory and as such non-reviewable on direct appeal. *United States v. Ryan,* 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971); *Alexander v. United States,* 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906). The contempt citation, being civil in nature and having been issued against a party to the ongoing litigation, is unappealable. *International Business Machines Corp. v. United States,* 493 F.2d 112 (2d Cir. 1973), *cert. denied,* 416 U.S. 995, 94 S.Ct. 2378, 40 L.Ed.2d 756 (1974); 9 Moore's Federal Practice ¶ 110.13[4] (2d ed. 1975); *cf. Ryan,* 402 U.S. at 532 & n.4, 91 S.Ct. 1580 (discussing challenge of *subpoena duces tecum* on review of civil contempt judgment against grand jury witness). Finally, if NBC had complied with the order but the district court ultimately had not enjoined the broadcast, the order would have eluded all review since NBC could not then appeal. *Public Service Commission v. Brashear Freight Lines, Inc.,* 306 U.S. 204, 206, 59 S.Ct. 784, 83 L.Ed. 1063 (1939) (per curiam); *United States v. State of Washington, Department of Fisheries,* 573 F.2d 1117, 1118 (9th Cir. 1978). For these reasons, mandamus, although an extraordinary writ, is an appropriate remedy.

that relief in the form of a prior restraint on publication would, on any assumption of fact or law, be appropriate with respect to the film in question. The order to produce the film in aid of a frivolous application for a prior restraint suffers the constitutional deficiencies of the application for an injunction. The order not only created a reasonable apprehension of an impending prior restraint, it was also a threatened interference with the editorial process. The district court's order was therefore void.

It is a fundamental principle of the first amendment that the press may not be required to justify or defend what it prints or says until after the expression has taken place. *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 558–59, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). The Government has been prohibited from interfering with the editorial process by entering the composing room to give directives as to the content of expression. *Miami Herald Publishing Co. v. Tornillo,* 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974). *See Associates & Aldrich Co. v. Times Mirror Co.,* 440 F.2d 133, 135 (9th Cir. 1971). The district court proceedings here intervened in the editorial process by ordering an official of the broadcasting company to produce a film just before its scheduled broadcast so that it could be examined for inaccuracies. A procedure thus aimed toward prepublication censorship is an inherent threat to expression, one that chills speech.

A broadcaster or publisher should not, in circumstances such as those in this case, be required to make a sudden appearance in court and then to take urgent measures to secure appellate relief, all the while weighing the delicate question of whether or not refusal to comply with an apparently invalid order constitutes a contempt. *Compare Shuttlesworth v. Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), *with Walker v. Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); *see United States v. Dickinson,* 465 F.2d 496 (5th Cir.), *on remand,* 349 F.Supp. 227 (M.D.

La.1972), *appeal from remand,* 476 F.2d 373 (5th Cir.), *cert. denied,* 414 U.S. 979, 94 S.Ct. 270, 38 L.Ed.2d 223 (1973); *see also Maness v. Meyers,* 419 U.S. 449, 458–59, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975).

We have heretofore vacated forthwith the orders to produce the film and all orders issued in aid of the orders to produce the film.