**PORTLAND FEMINIST WOMEN'S HEALTH CENTER; an Oregon nonprofit corporation; Leila Whittemore; Geri Craig; and Amy Aycrigg, and Jane Does Nos. 1 through 3, Plaintiffs–Appellees,**

v.

**ADVOCATES FOR LIFE, INC.; an Oregon nonprofit corporation; Priscilla Martin; Don Ayers; Fred Ritcherson; George Knezevich; Alice Buhler; Andrew Burnett; Kathy McNassar aka Kathy Stewart; Kathleen Walsh; Alta Austin; Shirley Barnard; Brian Clowes; Dan Muir; Christians in Action an unincorporated association; and John Does Nos. 1 through 100, Defendants–Appellants.**

Nos. 86–4102, 86–4140.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 4, 1987.

Decided Oct. 6, 1988.

See also 681 F.Supp. 688.

682

Henry Kane, Beaverton, Or., and William D. Bailey, Portland, Or., for appellants.

Barbara L. Nay, Stoel Rives Boley Jones & Grey, Portland, Or., for appellees.

Michael Stokes Paulsen, Center for Law & Religious Freedom, Merrifield, Va., and Thomas O. Alderman, Christian Civil Liberties Union, Eugene, Or., for amicus.

Before HUG, FARRIS and CANBY, Circuit Judges.

HUG, Circuit Judge:

This appeal challenges the constitutionality of a preliminary injunction issued by the district court in litigation still pending before it. We are called upon to determine whether the preliminary injunction is impermissibly vague and whether it abridges protected First Amendment rights of the appellants.

## FACTS

Appellants are a nonprofit corporation that engages in right-to-life advocacy, and seven of its members; an unincorporated association that engages in right-to-life advocacy and one of its members; one hundred Doe members of the two organizations; and four additional individuals (hereinafter, "the advocates"). These parties are defendants in litigation brought in district court by the appellees as plaintiffs. Appellees are a nonprofit corporation that provides medical treatment for women at its facility, including pregnancy testing, abortions, gynecological service, preventive health care, and reproductive counseling; five of its employees; and one individual client (hereinafter, "the clinic").

The clinic brought an action against the advocates that was based on several spirited demonstrations in front of the clinic's building. The complaint sought both equitable relief and damages for conspiracy to prevent exercise of federal constitutional rights; violation of Oregon's civil racketeering statutes; interference with business relations; intentional infliction of emotional distress; assault; and defamation. The clinic moved for a preliminary injunction, and the motion was brought before a magistrate for an evidentiary hearing.

The magistrate recommended to the district court that a preliminary injunction be issued based on his findings of fact. We quote the material portions of these findings:

### Findings from the preliminary injunction hearing

The evidence showed that the following conduct has taken place. Defendants and others ("demonstrators") gather at the Center[1] for demonstrations against abortion on days on which abortions and other medical procedures are performed. The number of demonstrators vary from fewer than ten to a number approaching 160. These demonstrations have occurred on a fairly regular basis since 1984 and are likely to continue in the future in a similar manner in which they have taken place in the past unless the court orders otherwise.

Demonstrators often crowd around the Foster Road entrance to the Center with large signs and other objects. These signs and objects are waved at clients and client escorts in a threatening manner and used to impede direct passage into the Center. Demonstrators scream and yell at Center clients, escorts, and staff, sometimes inches away from their faces, as they enter and exit the Center. Demonstrators press literature on clients and employees who have indicated they do not wish to talk or receive such literature. Demonstrators bump, grab, and push persons wishing to enter the Center in an effort designed to impede passage. Demonstrators chant, shout, and scream from the sidewalk alongside the Center in a manner which is calculated to be and is in fact heard inside the Center on the second floor where medical procedures are being performed.

The noise, intimidation, and threatening acts caused or made by the demonstrators makes the provision of medical care in the Center very difficult. This conduct raises the risk of medical complications and injury to clients. Some clients are upset and visibly shaken from having to maneuver their way through the demonstrators. This condition sometimes leads to incomplete or inaccurate health history reports which the client completes soon after entry to the Center. Clients and staff find it difficult to relax and concentrate. The atmosphere inside the Center is often tense during high-pitched demonstrations. On many occasions, the noise generated by demonstrators prevents conversation inside the Center, and makes procedures such as blood pressure measurement difficult.

During a medical emergency on February 5, 1985, a client of the Center needed to be taken to the hospital. Demonstrators impeded the passage of ambulance attendants who had been called to transport the client to the hospital.

1. "The Center" refers to the clinic's facility.

The district court adopted the findings in their entirety and issued the following injunction:

> IT IS HEREBY ORDERED that defendants, their agents, servants, employees, and all persons, groups, and organizations acting in concert with one or more of the defendants are enjoined from committing any of the following acts:
>
> 1. obstructing the free and direct passage of any person in or out of the Portland Feminist Women's Health Center (the Center);
>
> 2. demonstrating or distributing literature on the Foster Road sidewalk in front of the Center in a rectangular zone that extends from the Center's front door to the curb and twelve and one-half feet on either side of a line from the middle of the Center's door to the curb;
>
> 3. shouting, screaming, chanting, or yelling during on-site demonstrations;
>
> 4. producing noise by any other means which substantially interferes with the provision of medical services within the Center, including counseling;
>
> 5. trespassing on Center property;
>
> 6. damaging the property of the Center, its employees or clients; and
>
> 7. interfering with the Center's receipt of public utility services.
>
> This Order shall remain in effect until further order of the court.

After the injunction was issued, the demonstrations continued, and at a hearing the district court found several of the individual advocates in contempt. We are asked to determine the validity of both the injunction and the contempt citations.

## ANALYSIS

The district court's jurisdiction over the litigation underlying this appeal is based on 28 U.S.C. § 1331 (1982). We have jurisdiction over an appeal from an order issuing a preliminary injunction under 28 U.S.C. § 1292(a)(1).

▮ As a general matter, our review of an order granting a motion for a preliminary injunction is limited to determining whether the order is an abuse of discretion, based on erroneous legal standards, or clearly erroneous findings of fact. *Oakland Tribune, Inc. v. Chronicle Publishing Co., Inc.,* 762 F.2d 1374, 1376 (9th Cir.1985). We apply this standard to our review of the order's sufficiency under preliminary injunction standards. However, we are also called upon to review the injunction for constitutional infirmity. Because the findings of fact are not in dispute, our review of the constitutional issues is *de novo. See Jews for Jesus, Inc. v. Board of Airport Comm'rs,* 785 F.2d 791, 792 (9th Cir.1986).

The decision whether to issue a preliminary injunction is made under the following standard. "To obtain a preliminary injunction, a party must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in its favor." *Apple Computer, Inc. v. Formula Int'l, Inc.,* 725 F.2d 521, 523 (9th Cir.1984). Following an evidentiary hearing and based on findings of fact, the magistrate determined that a preliminary injunction was justified under either standard and recommended issuance of the preliminary injunction. The district court, after appropriate inquiry, adopted the magistrate's findings and recommendation. Appellants do not seriously challenge the magistrate's findings of fact or his determination under the preliminary injunction standard. He explicitly found that the defendants engaged in the offending conduct. We proceed in our analysis on the basis that the findings of fact are not clearly erroneous, and the preliminary injunction standard was satisfied.

Appellants challenge the injunction's content with arguments asserting impermissible vagueness for failure to set forth an objective decibel level for prohibited shouting, yelling, chanting, and noise making. They argue that this purported vagueness has a chilling effect on protected activities and places demonstrators at the mercy of the appellees' subjective standards. Because we are dealing with an injunction,

the vagueness issue is controlled by Fed.R. Civ.P. 65(d).

■ Rule 65(d) requires that injunctions "shall be specific in terms; [and] shall describe in reasonable detail ... the act or acts sought to be restrained." The Supreme Court has indicated that the policy behind the rule is "to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L.Ed.2d 661 (1974); for general discussion see 11 C. Wright, A. Miller and F. Elliot, Federal Practice and Procedure § 2955 (1973 and Supp.1988). We have interpreted the rule and its policy to require that "the language of injunctions ... be reasonably clear so that ordinary persons will know precisely what action is proscribed." *United States v. Holtzman*, 762 F.2d 720, 726 (9th Cir.1985). While ambiguities in an injunction are construed in favor of the enjoined party, nonetheless "[i]njunctions are not set aside under Rule 65(d) ... unless they are so vague that they have no reasonably specific meaning." *Id.*

We do not find the injunction here in dispute impermissibly vague under the applicable standards. The language that the advocates attack enjoins "shouting, screaming, chanting, or yelling during on-site demonstrations; [and] ... [p]roducing noise by any other means which substantially interferes with the provision of medical services within the Center, including counseling...." They argue that without a specific decibel level or other objective standard they cannot know whether their conduct violates the injunction. They argue further that without such a standard, the imposition of contempt sanctions under the injunction will be based on the biased and subjective interpretation of the clinic.

While an enumerated decibel level certainly would provide a more specific definition of the enjoined conduct than the injunction now provides, we do not believe that such specificity is required. The terms of the injunction place the enjoined

parties on fair notice of the actions that are prohibited in language that is reasonably understandable. Greater particularity, while it may be desirable, is not required under Rule 65(d).

■ The appellants' second concern, that the injunction's enforcement will be subject to the appellees' interpretation, is unfounded. The injunction can be enforced only by the district court. It is true that in a contempt proceeding the district court may hear the appellees' presentation of testimony and other evidence regarding appellants' conduct. However, the district court will interpret the injunction and must weigh such evidence dispassionately before arriving at a decision. The court's interpretation, conclusions, and enforcement decisions will govern, not those of the appellees.

For the foregoing reasons, the injunction is valid as an injunction. We now turn to the question whether the injunction is valid as a regulation of speech.

We begin our constitutional analysis by noting that the injunction undeniably regulates political speech in a public forum. Whether abortions should be legal is one of the most hotly contested issues of our day. The Supreme Court has recently restated the preferred position in American constitutional jurisprudence of speech concerning such issues. "We have recognized that the First Amendment reflects a 'profound national commitment' to the principle that 'debate on public issues should be uninhibited, robust, and wide-open' ... and have consistently commented on the central importance of protecting speech on public issues." *Boos v. Barry*, — U.S. —, 108 S.Ct. 1157, 1162, 99 L.Ed.2d 333 (1988) (citations omitted). Moreover, the injunction regulates speech "on public streets and sidewalks, traditional public fora that 'time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Id.* (citations omitted). The authority to restrict expression in public fora is "very limited." *Id.*

With these vital principles in mind, we turn to the preliminary injunction itself.

The preliminary injunction is not a content-based restriction of expression. It refers not at all to the specific viewpoints that the advocates press, nor even to the general issues raised at their demonstrations. Rather, it focuses exclusively on the location and manner of expression. It protects the clinic from loudness and physical intimidation, not from content of speech. Therefore, we apply to the preliminary injunction the rules regarding the constitutionality of "time, place, and manner" regulations of speech.

The Supreme Court has consistently affirmed that "reasonable 'time, place, and manner' regulations may be necessary to further significant governmental interests, and are permitted." *Grayned v. City of Rockford,* 408 U.S. 104, 115, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972). "[T]he government may enforce reasonable time, place, and manner regulations as long as the restrictions "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *United States v. Grace,* 461 U.S. 171, 177, 103 S.Ct. 1702, 1707, 75 L.Ed.2d 736 (1983) (citations omitted).

The reasonableness of a time, place, and manner restriction depends heavily upon "[t]he nature of a place, 'the pattern of its normal activities....' The crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time." *Grayned,* 408 U.S. at 116, 92 S.Ct. at 2303. The Supreme Court has applied this principle to sustain regulation of disruptive speech in front of schools, *Grayned,* 408 U.S. at 121, 92 S.Ct. at 2306, and near a courthouse, *Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965). We have no doubt that the interests that render reasonable the regulation of disruptive expression outside schools and courthouses also operate to allow regulation of disruptive expression outside a clinic where medical services including surgery are offered.

We also find that the interest sought to be vindicated by the preliminary injunction is "a significant government interest." The primary interest of the district court in issuing the preliminary injunction is to protect the rights of the clinic and its patients from irreparable harm. Inextricably entwined with this interest is the interest in protecting the ability of the clinic to provide medical services free from interference that may endanger the health and safety of its patients. The findings of fact adopted by the district court indicate that the purpose behind its order is to restrict conduct that has impeded the provision of medical care, raised the risk of medical complications and injury, and blocked the path of ambulance personnel in an emergency.

■ Except in its prohibition of shouting, screaming, chanting, or yelling, without regard to the disruption caused, the preliminary injunction is narrowly tailored to vindicate the interest in protecting medical care. The advocates do not challenge the first paragraph of the preliminary injunction, prohibiting obstruction of access to the clinic. They dispute the breadth of the second paragraph, which sets up a "free zone" that extends twelve-and-a-half feet to the right and the left of the front door and from the door front to the curb. The free zone is tailored to address threats, intimidation, and assault of clinic personnel and clients that impede the safe provision of medical care. While the court could possibly achieve its goal with a narrower free zone, we decline to entertain quibbling over a few feet. Furthermore, we do not find the second paragraph of the injunction cumulative with the first paragraph.

■ The advocates' strongest challenge to the preliminary injunction is against the third and fourth paragraphs, which prohibit shouting, screaming, chanting, yelling, and producing noise. Whether these provisions are tailored narrowly enough is a close question. The district court found that chanting, shouting, and screaming during demonstrations were audible on the second floor, where medical procedures are performed. Chanting, shouting, screaming, or yelling may be an expressive, albeit unpleasant, form of behavior. If it causes no disruption of clinic operations, such expression would not materially affect the interest at stake here. On the other hand, if the conduct rises to a volume that obstructs

the provision of services in the Center, it may be enjoined. *See Grayned*, 408 U.S. at 113, 92 S.Ct. at 2301. Accordingly, we modify the injunction by combining its paragraphs numbered 3 and 4 in the following fashion:

3. shouting, screaming, chanting, yelling, or producing noise by any other means, in a volume that substantially interferes with the provision of medical services within the Center, including counseling;

. . . .

The remainder of the preliminary injunction is not contested. We see no problem with the prohibition against trespassing, damaging property, and interfering with utility services.

The advocates raise several additional arguments against affirmance of the preliminary injunction. They contend that it is overbroad, in that it reaches protected activity and its language reaches individuals and groups not responsible for disruptive conduct. *See City Council v. Taxpayers for Vincent*, 466 U.S. 789, 798–99, 104 S.Ct. 2118, 2125–26, 80 L.Ed.2d 772 (1983). We have discussed the first of these concerns already. As to the second, the language of the injunction tracks the language of Fed. R.Civ.P. 65(d). Under the rule, an injunction "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed.R. Civ.P. 65(d). Given this limit on the order's reach, there is no basis for concern that one who is unaware of the injunction can be found in contempt for violating it, nor that it will have a chilling effect on parties neither before the court nor in active cooperation with the advocates. Because the injunction is effective only within these limits, we sustain it.

■ Appellants also challenge the injunction as constitutionally void for vagueness. *See Smith v. Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). However, that doctrine does not affect our decision. The vagueness doctrine is based on due process principles that require fair no-

tice and warning. *Id.* at 572–73, 94 S.Ct. at 1246–47. It also incorporates a requirement that specificity be sufficient to avoid arbitrary and discriminatory enforcement. *Id.* The doctrine's goal is to avoid "allow[ing] policemen, prosecutors, and juries to pursue their personal predilection," by requiring legislators to promulgate specific standards in criminal statutes. *Id.* at 575, 94 S.Ct. at 1248. These concerns arise in a different context here, where enforcement lies entirely in judicial hands. So viewed, the injunction is not unconstitutionally vague, for reasons we have already set forth. Those subject to its strictures have adequate notice of what is required of them, and sufficient assurance of the direction enforcement will take.

■ The defendants who were found in contempt by the district court for violating the preliminary injunction also appeal their contempt citations. However, their contempt is civil in nature. "The contempt citation[s], being civil in nature and having been issued against a party to the ongoing litigation, are unappealable." *Goldblum v. Nat'l Broadcasting Corp.*, 584 F.2d 904, 906 n. 2 (9th Cir.1978). Therefore, we do not review the contempt orders.

The preliminary injunction order is AFFIRMED As Modified. Each party shall bear its own costs on appeal.