**In re CAPITAL CITIES/ABC, INC., Petitioner.**

**No. 90–7749.**

United States Court of Appeals, Eleventh Circuit.

Nov. 2, 1990.

Norman E. Waldrop, Jr., Grover E. Asmus, II, Armbrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, Mobile, Ala., for appellant.

J.W. Goodloe, Jr., C. Richard Wilkins, Vickers, Riis, Murray and Curran, Mobile, Ala., for appellee.

Before ANDERSON, BIRCH and DUBINA, Circuit Judges.

BIRCH, Circuit Judge:

This matter is before us on a petition for mandamus relief directed at the United States District Court for the Southern District of Alabama (the "District Court") and is initiated by the defendant ("ABC") in the District Court proceedings. This petition presents a question of first impression for this court involving the rights of a copyright owner and a media defendant complaining of potential prior restraint in violation of First Amendment rights, in the context of expedited discovery preliminary to a hearing on an application for injunctive relief.

On October 9, 1990, the plaintiff commenced a civil action in the District Court by filing a complaint, ex parte application for a temporary restraining order, and associated affidavits and related papers. The plaintiff is the co-author of a book entitled *Conversations With The Enemy: The Story of PFC Robert Garwood* (the "Book"). The Book was published in 1983. The subject of the Book, Robert Garwood, was a prisoner of war in Vietnam who returned to the United States in 1979. He was court-martialled and, in 1981, was convicted of collaborating with the enemy and assaulting a POW. Plaintiff has alleged that he entered into a "collaboration contract" with Garwood, pursuant to which he acquired the "exclusive right" to Garwood's life story for the purpose of writing the Book and jointly exploiting the rights therein. The complaint further alleges that in or about July of 1990, the plaintiff learned that, during the 1990 fall television

season, ABC intended to broadcast a made-for-television motion picture regarding the life of Garwood (the "Movie").

The complaint sets out four causes of action: (1) copyright infringement; (2) violation of the Lanham Act (15 U.S.C. § 1125(a)); (3) interference with plaintiff's contractual relationship with Garwood; and (4) interference with plaintiff's prospective business advantage associated with the sale of the motion picture rights in and to the Book. Plaintiff's complaint alleges registration of his copyright in the book. Attached to the affidavit of Theron Raines, a literary agent for the plaintiff[1], is a copy of the registration certificate of the copyright office (certificate no. TX 1–251–206)[2] which reflects that the plaintiff and Garwood are the copyright claimants and owners of the copyright in the Book. For the purposes of this order we will only consider the copyright claim of the plaintiff in our analysis with respect to the disposition of the instant petition for mandamus relief.

Following the filing of the complaint and application for a temporary restraining order, the parties came to an accord that made it unnecessary for the District Court to rule on said application. With the understanding that the District Court would conduct a hearing on or before November 15, 1990, to consider whether to issue a preliminary injunction with respect to the proposed broadcast of the Movie, the parties entered into two stipulations. The first stipulation provided, in essence, that ABC would not broadcast the Movie prior to January 1, 1991, and that, prior to November 15, 1990, ABC would not publicly promote the Movie. The other stipulation entered into, with respect to discovery, set out a general timetable for expediting discovery prior to the preliminary injunction hearing. As noted by the petitioner:

> At all times following the initiation of this civil action, plaintiff has pressed ABC to produce the "shooting script" for the Movie for the purpose of reviewing the script and comparing it to the Book and thereby to support plaintiff's allegations that the Movie infringes on plaintiff's copyright interest in the Book.[3]

It is alleged in plaintiff's response to ABC's objection to production of the "shooting script" that as early as August 7, 1990, counsel for plaintiff first requested a copy of the "shooting script", offering to review the document under an agreement of confidentiality. This allegation was substantiated by the affidavit of Steven J. Rosenwasser, an California attorney representing plaintiff.[4] On October 16, 1990, ABC, pursuant to the discovery stipulation, filed its objection to production of the "shooting script". Objection was made to producing the script prior to the initial broadcast of the Movie

> on the ground that Plaintiff's effort to obtain production of said materials at this time, prior to broadcast of the Motion Picture, is solely for the purpose of enjoining said broadcast and represents an invalid and unconstitutional attempt at "prior restraint" in violation of the Defendant's rights under the First Amendment to the U.S. Constitution.[5]

On October 19, 1990, after considering written arguments, the District Court issued its order overruling ABC's objection to production of the "shooting script". The District Court's order directed production of the "shooting script" by Wednesday,

---

1. The affidavit was submitted in support of plaintiff's motion for injunctive relief in the District Court.

2. Although the plaintiff bears the initial burden of persuasion with respect to the validity of his copyright, "once he produces a copyright certificate he establishes a prima facie case of validity of his copyright and the burden of production shifts to the defendant to introduce evidence of invalidity." *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 826 (11th Cir. 1982).

3. Defendant's Petition For Mandamus From The United States District Court For The Southern District Of Alabama, Southern Division, p. 5.

4. That affidavit was filed in support of plaintiff's application for injunctive relief in the district court.

5. Defendant's Petition For Mandamus From The United States District Court For The Southern District Of Alabama, Southern Division, pp. 5–6.

October 24, 1990. On October 19, 1990, ABC filed a motion for reconsideration of the ruling regarding production of a "shooting script". After an additional exchange of written argument between counsel, on Monday, October 29, 1990, the District Court communicated its desire to stand firm on its initial decision that the "shooting script" should be produced on or before October 24, 1990. Thereafter, on October 30, 1990, the instant petition for mandamus relief was filed in this court.[6]

Reduced to its simplest terms, the petitioner's argument suggests that any injunction entered by the District Court with respect to the initial broadcast of the Movie would constitute a "prior restraint" in violation of the First Amendment. We disagree.

■ The copyright owner's rights spring from Article 1, § 8, Clause 8 of the Constitution, which provides in pertinent part as follows:

> The Congress shall have the power ... to promote the Progress of Science and the Useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries.

The Copyright Act of 1976, codified at 17 U.S.C. § 101 et seq., sets out the rights of a copyright owner and the method of vindicating those rights. The "[e]xclusive rights in copyrighted works" [17 U.S.C. § 106] include certain severable rights, such as the right to prepare derivative works[7], the right to reproduce the copyrighted work in copies[8], and the right to display the copyrighted work publicly ("in the case of literary, dramatic ... works, ... including: the individual images of a motion picture ..." 17 U.S.C. § 106(5)). Moreover, the Copyright Act specifically authorizes injunction as a remedy for infringement. Section 502(a) (17 U.S.C.) provides that: "Any court having jurisdiction of a civil action arising under this title may ... grant temporary and final injunctions on such terms as it may deem reasonable to *prevent* or restrain infringement of a copyright." (emphasis added). Accordingly, the Copyright Act clearly contemplates injunctive relief to "prevent" infringement.[9] Section 501(a) (17 U.S.C.) (entitled "Infringement of copyright") states: "Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 118 ... is an infringer of the copyright." Therefore, in the context of the instant case, subject to proper proof, it is certainly conceivable that petitioner, ABC, could be an "infringer" of the "exclusive rights" of the plaintiff, the copyright owner. As this court recently noted in *Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 849 (11th Cir.1990):

> With respect to copyright protection, "[t]he first amendment is not a license to trammel on legally recognized rights in intellectual property." *Dallas Cowboys*

---

**6.** Petitioner has indicated that it is following the procedure set forth in *Goldblum v. National Broadcasting Corp.,* 584 F.2d 904, 906 n. 2 (9th Cir.1978) in pursuing this application for extraordinary relief.

**7.** A motion picture based upon a book would constitute a "derivative work" vis-a-vis the Book.

**8.** The copying of a book's dialogue into a screenplay or script could constitute such a reproduction.

**9.** *Salinger v. Random House, Inc.,* 811 F.2d 90 (2d Cir.1987) (Second Circuit directed district court to issue a preliminary injunction restraining the defendant from publishing a biography of author J.D. Salinger which copied Salinger's protected expression); *Gilliam v. American Broadcasting Companies, Inc.,* 538 F.2d 14 (2d Cir.1976) (Second Circuit directed district court to enter preliminary injunction to prevent ABC from broadcasting Monty Python program in unauthorized, edited form); *Universal City Studios v. Film Ventures International,* 543 F.Supp. 1134 (C.D.Cal.1982) (preliminary injunction against owners of the movie "Great White," which movie was found to be substantially similar to the film "Jaws"); *Metro–Goldwyn–Mayer, Inc. v. Showcase Atlanta Co-op. Productions,* 479 F.Supp. 351 (N.D.Ga.1979) (enjoining performance of a musical production similar to "Gone With The Wind"); *Douglas International Corp. v. Baker,* 335 F.Supp. 282 (S.D.N.Y.1971) (enjoining production of a stage play concerning the life of Lenny Bruce); *Marvin Worth Productions v. Superior Films Corp.,* 319 F.Supp. 1269 (S.D.N.Y.1970) (enjoining distribution or exhibition of a biographical film concerning Lenny Bruce which infringed plaintiff's copyrighted materials).

[*Cheerleaders, Inc. v. Scoreboard Posters, Inc.*], 600 F.2d [1184] at 1188 (5th Cir.1979). Since the Copyright Act is the congressional implementation of a constitutional directive to encourage inventors by protecting their exclusive rights in their discoveries, copyright interests also must be guarded under the Constitution, and injunctive relief is a common judicial response to infringement of a valid copyright. [citations omitted.]

■ The Supreme Court has stated that "the writ of mandamus is an extraordinary remedy, to be reserved for extraordinary situations." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 289, 108 S.Ct. 1133, 1143, 99 L.Ed.2d 296 (1988). Traditionally, the writ has been used to compel an inferior court to exercise its authority when necessary, or to confine such a court to a lawful exercise of its prescribed jurisdiction. *Id.* Moreover, even if exceptional circumstances exist to justify mandamus relief, the party seeking mandamus bears the burden of demonstrating a "clear and indisputable" right to issuance of the writ. *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953).

■ In the instant case, the production of the "shooting script" in the discovery phase of the litigation, prior to the scheduled evidentiary hearing on the pending motion for injunction relief, will promote the First Amendment interests of the petitioner and the public. ABC portrays its situation in terms of an "all or nothing" proposition: that is, under no circumstances should the District Court be allowed to enter an order enjoining the broadcast of the made-for-television Movie. Petitioner argues that such an injunction would constitute a "sweeping prior restraint" and cites authority condemning such a restraint. In light of such existing precedent it is tactically and strategically advantageous for petitioner to frame the issue in this manner. However, what is not addressed by petitioner, although certainly contemplated by the copyright law, is the more limited, and conceivably appropriate, restraint that could be imposed by the District Court.

■ It is axiomatic that only the expression of an idea is protectable, and not the idea itself. *Digital Communications Associates, Inc. v. Softklone Distributing Corp.*, 659 F.Supp. 449 (N.D.Ga.1987); 17 U.S.C. § 102(b). Moreover, in the context of works involving public figures which are historical or biographical in nature, the degree of copying necessary to constitute actionable infringement must be high and the fact of copying clear.[10] Stated differently, in such a case the copying must be flagrant.

It is conceivable that when the District Court compares the "shooting script" with the protected work (the Book), it may determine that there are blocks of dialogue taken "whole cloth" from the protected work and placed on the tongues of the actors in the Movie. Under those circumstances, the District Court could enter an injunction specifying those *portions* of the film which it found to be violative of plaintiff's copyrighted work and enjoining those portions from being displayed (i.e., broadcast). In this way the copyright owner's rights are protected, and the petitioner's First Amendment rights and those of the public (which in this circuit requires consideration in any determination involving injunctive relief[11]) are properly balanced. Moreover, *at this juncture* such a determination would afford petitioner the opportunity to make whatever changes it deems appropriate to maintain the aesthetic quality and continuity of the film in light of any such "surgically" fashioned injunctive relief. Such a "surgical" restraint does not "give directives as to the content of expression"[12], only the *manner* of expression.

**10.** See, e.g., *Nash v. CBS, Inc.*, 899 F.2d 1537 (7th Cir.1990); *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365 (5th Cir.1981); *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972 (2d Cir.), *cert. denied* 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980).

**11.** *Snook v. Trust Co. Bank of Savannah*, 909 F.2d 480, 483 (11th Cir.1990).

**12.** *Goldblum v. National Broadcasting Corp.*, 584 F.2d 904, 907 (9th Cir.1978). In *Goldblum* the plaintiff sought to enjoin the broadcast of a film

Should the District Court be persuaded to enter such injunctive relief, after being put thus on notice, petitioner can express the content (i.e., ideas) in another manner which does not infringe the copyright owner's protected manner of expression.

Accordingly, we DENY the petition for mandamus relief.

only slightly more than 24 hours prior to the scheduled telecast. The plaintiff in that case was not the holder of a registered copyright and copyright infringement was not alleged.