36 F.3d 1103
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Gordon Dale MEADOR, Plaintiff-Appellant,
v.
NEW TIMES, INC., Terese Greene; Michael Lacey, Defendants-Appellees.
 No. 93-15213.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 12, 1994.*
Decided Sept. 16, 1994.
 
 1
 Before: FLETCHER, HALL and WIGGINS, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 
 3
 Gordon Dale Meador appeals pro se the district court's order denying his motion for a preliminary injunction. Meador alleged that the New Times Newspaper of Phoenix, Arizona ("New Times") and one of its writers committed the state law torts of defamation and false light invasion of privacy against him when they published an article linking him to the deaths of two young boys. He sought a preliminary injunction restraining New Times from publishing his name in the future. We have jurisdiction and we affirm.
 
 
 4
 * Meador currently is serving a life sentence without possibility of parole in a California state prison for an unrelated crime. In January 1991, New Times published an article by Terry Greene entitled "The Eternal Fire." The article described the story of two young boys who died in a fire in a shack near their homes in Arizona on April 3, 1974. Originally, the deaths were determined to be accidental and much of the evidence regarding the deaths was lost or destroyed. The article explains that in 1978, Meador contacted the Mohave County Sheriff's Office and claimed to know who killed the children. At an interview with deputies from the Sheriff's Office, Meador accused his "friend" Marc Stubblefield and a man named Mark Waldy of killing the two boys by pouring gasoline inside the shack, lighting a match, and locking the two boys inside. According to the article, the County Sheriff's Office subsequently reopened the investigation and labeled the deaths as homicides. The article states that "[t]he chief suspects in the unresolved murders are ... prisoners' Dale Gordon Meador and Mark Stubblefield ... according to sheriff's officials." SER 8 at 24. The article connected Meador with events surrounding the deaths, highlighted Meador's involvement in other criminal activities, and explained that the case is unlikely to be resolved because most of the evidence has been destroyed or lost. It also quotes from several letters that Meador wrote to Greene in response to letters she sent him in prison, and notes that Meador denies that he had any part in the killings.[1]
 
 
 5
 Meador asserts that, following publication of the article, he was assaulted on three separate occasions by inmates who thought he was a child killer. He contends that as a result of these attacks he has suffered physical and psychiatric injuries, and several members of his family have disowned him. Meador alleges that he has been assaulted five additional times since the district court denied his motion for a preliminary injunction.
 
 
 6
 In February 1992, Meador wrote to New Times, Inc., the publisher of the New Times Newspaper, demanding retraction of the article. The newspaper did not publish a retraction.
 
 
 7
 In June 1992, Meador filed an action in pro per against appellees New Times, Inc., and Greene in the Northern District of California. On June 11, 1992, Meador filed a Motion for a Temporary Restraining Order and/or Preliminary Injunction against appellees, in which he requested that appellees be enjoined from printing his name in the New Times Newspaper "in any manner which would cause further assaults on his person...."
 
 
 8
 The federal district court in California liberally construed the complaint to find that Meador stated state law claims including invasion of the right to privacy, defamation, and assault and battery. The court concluded that venue was improper in California and transferred the case sua sponte to the District of Arizona.
 
 
 9
 On September 8, 1992, the district court in Arizona denied Meador's request for a temporary restraining order. On January 7, 1992, the district court denied Meador's motion for a preliminary injunction in a brief order, which concludes that Meador failed to satisfy the criteria necessary to obtain such relief. Meador's appeal is timely.
 
 II
 
 10
 The district court's denial of a motion for preliminary injunction is reviewed for abuse of discretion. Hunt v. National Broadcasting Co., 872 F.2d 289, 292 (9th Cir.1989). Reversal is appropriate if the district court applies an erroneous legal standard, rests its decision on clearly erroneous findings of fact, or otherwise abuses its discretion. Id.
 
 
 11
 "A party seeking a preliminary injunction must demonstrate either a combination of probable success on the merits and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips in its favor." Id. at 293; United States v. Odessa Union Warehouse Co-op, 833 F.2d 172, 174 (9th Cir.1987). " 'These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.' " Hunt, 872 F.2d at 293 (quoting Odessa Union, 833 F.2d at 174).
 
 
 12
 Accordingly, although a showing that plaintiff will be more severely prejudiced by a denial of the injunction than defendant would be by its grant does not remove the need to show some probability of winning on the merits, it does lower the standard that must be met. Conversely, if there is only slight evidence that plaintiff will be injured in the absence of interlocutory relief, the showing that he is likely to prevail on the merits is particularly important.
 
 
 13
 11 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure Sec. 2948, at 455 (1973).
 
 
 14
 Application of this standard convinces us that the district court did not abuse its discretion in denying Meador's motion for a preliminary injunction because Meador has failed to establish that the balance of hardships weighs in his favor, and because he has failed to demonstrate a likelihood of success on the merits.
 
 
 15
 A. Irreparable Injury and the Balance of Hardships
 
 
 16
 Meador contends that he will suffer significant future injury if no injunction is issued. Although the record indicates that Meador has suffered physical abuse while incarcerated, and he contends that most of it has occurred as a result of publication of "The Eternal Fire," the balance of hardships favors the district court's decision to deny the preliminary injunction.[2] On the one hand, not only would the injunction constitute a prior restraint, but on the other, its potential for relief to Meador is at best highly unlikely.
 
 
 17
 "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights" and are presumptively unconstitutional. Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976); Hunt, 872 F.2d at 293; Goldblum v. National Broadcasting Corp., 584 F.2d 904, 907 (9th Cir.1978). "It is a fundamental principle of the first amendment that the press may not be required to justify or defend what it prints or says until after the expression has taken place." Goldblum, 584 F.2d at 907. Those seeking to obtain a prior restraint on publications carry a heavy burden of justifying the need to impose the restraint. Nebraska Press, 427 U.S. at 568; New York Times Co. v. United States, 403 U.S. 713, 714 (1971) (holding that government failed to show that publication of the Pentagon Papers will clearly result in direct, immediate, and irreparable harm to the nation).
 
 
 18
 Our circuit has twice rejected motions to impose prior restraints on the press in cases similar to this one where the plaintiff alleged that future publication would constitute false light invasion of privacy and would injure the plaintiff. See Rifkin v. Esquire Pub., Inc., 7 Media L.Rep. (BNA) 1231, 1232 (9th Cir.1981); Goldblum, 584 F.2d at 905-07. In Goldblum, a prisoner and former executive officer of the Equity Funding Corporation sought to restrain the broadcast of "Billion Dollar Bubble," a docudrama based on events surrounding a securities and insurance fraud that caused the insolvency of Equity Funding. Goldblum alleged that the representations would be inaccurate, and would jeopardize his release on parole, his right to a fair trial in a pending civil matter, and his fair trial right in any potential future criminal action. Goldblum, 584 F.2d at 905. We refused to permit judicial review of the film prior to broadcast--the remedy imposed by the district court--noting that the possibility of inflaming parole officers or of influencing a purely speculative criminal prosecution did not justify a prior restraint. Id. at 906-07.
 
 
 19
 Similarly, in Rifkin v. Esquire, a federal prisoner sought to enjoin publication of an issue of Esquire on the grounds that an article within it portrayed him in a false light and would jeopardize his chances of obtaining parole. 7 Media L.Rep. (BNA) at 1232. We denied Rifkin's motion, ruling that the speculative possibility of angering prison authorities and thus injuring the prisoner did not justify a prior restraint. Id.
 
 
 20
 Although the likelihood of further assaults in prison is arguably greater in this case than the potential harms alleged in either Goldblum or Rifkin, the probable unconstitutionality of an injunction supports the district court's denial of Meador's motion. In short, irreparable harm a fortiori results from the prior restraint.
 
 
 21
 An additional factor weighing against Meador is the fact that the story has already been published; it is unlikely that an injunction prohibiting future publications would effectively protect Meador from future assaults. See Hunt, 872 F.2d at 296 (because substantial unrestrained publicity about Hunt had already occurred, Hunt failed to show how an injunction prohibiting the broadcast of a docudrama would effectively protect his rights). Enjoining New Times from future publication would not eliminate the harm that publication already has caused (i.e., the assaults that have occurred and the breakdown in Meador's relationship with his family).
 
 B. Probability of Success on the Merits
 
 22
 Meador has failed to show a likelihood of success on the merits on either his defamation or his false light privacy claims.
 
 1. Defamation
 
 23
 Under Arizona law,[3] in a defamation action against a media defendant regarding an issue of public concern, a private figure can recover compensatory damages on proof by a preponderance of the evidence that the defendant negligently published false statements about the plaintiff that harmed the plaintiff's reputation. Dombey v. Phoenix Newspapers, Inc., 724 P.2d 562, 567 (Ariz.1986); Scottsdale Pub., Inc. v. Superior Court, 764 P.2d 1131, 1132 n. 2 (Ariz.App.1988). Thus, in order to succeed on his claim, Meador would be required to show that New Times and Greene negligently published false statements about him that were defamatory.
 
 
 24
 It is unlikely that Meador will succeed on the merits, primarily because it appears that none of the statements in the "Eternal Fire" article are false. Meador asserts that the article says that he killed the boys. Contrary to this assertion, however, the article states only that Meador is a chief suspect in the homicide investigation and that he denies that he had any part in the killing. The article quotes from a police report regarding the police officers' interview with Meador, in which Meador asserts that his friend Stubblefield was responsible for killing the two boys. The article also notes that on the day of the interview, Meador passed a lie detector test and that his statement " 'had been fairly well confirmed.' " SER 8 at 24.
 
 
 25
 It is also unlikely that Meador can prove negligence because he does not explain what actions taken by New Times or by Greene were negligent. In support of their motion opposing the preliminary injunction, appellees submitted an affidavit of Jack Nelson, a Deputy in the Mohave County Sheriff's Department, which states that he told Greene that he had interviewed Meador regarding the deaths of the children and that he considered Meador to be a suspect in the investigation. Appellees also submitted an affidavit by Dale Lent, a detective, which states that he informed Greene that the deaths of the two boys had been classified as homicides and that Meador was a suspect in the investigation. Lent's affidavit also states that Lent showed Greene Meador's rap sheet, which indicated that Meador was serving a life sentence without parole in a California prison. Finally, Greene submitted an affidavit detailing the careful interview process she used to investigate and prepare her story.
 
 
 26
 In light of this evidence, it appears unlikely that Meador will establish a successful defamation claim.
 
 2. False Light Invasion of Privacy
 
 27
 Arizona has adopted the Restatement (Second) of Torts elements of a false light invasion of privacy claim. Godbehere v. Phoenix Newspapers, Inc., 783 P.2d 781, 788 (Ariz.1989). The Restatement provides:
 
 
 28
 One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
 
 
 29
 (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
 
 
 30
 (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.
 
 
 31
 Restatement (Second) of Torts Sec. 652E (1977).[4] Although Arizona law is clear that a public figure who brings a false light invasion of privacy claim must show actual malice to recover compensatory damages, the Arizona courts have not yet determined whether a private figure must also show actual malice, or merely negligence. Godbehere, 783 P.2d at 879 n. 6.[5] Under either standard, it is unlikely that Meador will make a successful showing.
 
 
 32
 First, the article does not contain false statements, nor does it appear to place Meador in a false light; instead, it states that Meador is a suspect in a homicide investigation. The fact that prison inmates conclude from this article that Meador is a child killer does not mean that the article actually places Meador in a false light. Furthermore, as previously noted, there is no specific evidence or allegation of either negligence or recklessness on the part of appellees.
 
 
 33
 Because Meador has failed to show that the balance of hardships weighs in his favor or that there is a likelihood of success on the merits, we affirm the district court's denial of Meador's motion for preliminary injunction.
 
 
 34
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The article quotes one of Meador's letters as stating, "My God. I was a kid back then. Just barely 17, and as I recall it, a local politician's son was involved and I was told to keep my mouth shut and pending criminal charges would be dismissed. I did, and they were. End of story." SER 8 at 24. It continues, "Both kids were locked inside and caught on fire, but both were unconscious prior to." Id
 
 
 [2]
 As noted above, Meador has suffered from three assaults, which he alleges were inflicted by inmates who believe that he is a child killer. Meador also alleges that he has suffered from five additional assaults since the district court denied his motion for a preliminary injunction
 
 
 [3]
 When an action is transferred on the grounds of improper venue, as it was in this case, the transferee court applies the law it would have applied if the action had commenced there. 15 Wright & Miller, Federal Practice and Procedure Sec. 3827, at 267 (1986); Manley v. Engram, 755 F.2d 1463, 1467 (11th Cir.1985); see also Muldeen v. Tropitone Furniture Co., 1 F.3d 964, 966-67 (9th Cir.1993). Because this is a diversity case, the choice of law rules of Arizona--the forum state--should apply. Lange v. Penn Mut. Life Ins. Co., 843 F.2d 1175, 1178 (9th Cir.1988). Arizona has adopted the Restatement (Second) of Conflicts (1971) choice of law rules. Bates v. Superior Court, 749 P.2d 1367, 1369 (Ariz.1988). Under the Restatement Secs. 149 & 150, in a defamation action, the law of the state where the publication occurred determines the rights and liabilities of the parties, and if the defamatory material was contained in a newspaper that was published in multiple states, the law of the state with the most significant relationship to the occurrence and parties applies. See Restatement (Second) of Conflicts Secs. 149 & 150 (1971). Similarly, in an invasion of privacy action, if the matter that invades a plaintiff's privacy right is contained in a newspaper, then the rights and liabilities of the parties are determined by the law of the state that has the most significant relationship to the occurrence and the parties. Id. Secs. 152 & 153. In this case, New Times was published in Arizona. The record does not indicate if New Times was circulated to other states, but even if it was, the state with the most significant relationship to the parties and the occurrence in this case was still Arizona: Arizona is where New Times is based, where the incident claimed to be false and misleading occurred, and the place of principal circulation of the publication. Thus, Arizona defamation law and privacy law apply to Meador's claims
 
 
 [4]
 Unlike a claim for defamation, which requires the plaintiff to prove that the defamatory statement was false, in a false light privacy action the plaintiff must prove only that the statement placed him in a false light. An example of a "truthful" statement that places an individual in a false light is the use of a photograph of that individual out of context. Thus, in Douglass v. Hustler Magazine, 769 F.2d 1128 (7th Cir.1985), cert. denied, 475 U.S. 1094 (1986), a woman who posed nude for Playboy magazine brought a successful action against Hustler magazine when Hustler subsequently published the photos. The court ruled that the jury could conclude that the implication that Douglass had posed voluntarily for Hustler placed her in a false light and was offensive. Id. at 1135-38
 
 
 [5]
 In general, courts disagree as to whether a private individual in a false light privacy action involving a matter of public interest must prove that a media defendant published with actual malice. In Time, Inc. v. Hill, 385 U.S. 374 (1967), the Supreme Court ruled that such a plaintiff must prove actual malice. Since then, the Supreme Court has ruled that a private individual in a defamation action may prevail merely on a showing of negligence. Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974). The Supreme Court has left unresolved whether the Gertz rule should also apply in false light privacy cases so that a private figure need only prove negligence, and not actual malice, in a suit against a media defendant. See Cantrell v. Forest City Pub. Co., 419 U.S. 245, 250-51 (1974). The Arizona Supreme Court has not yet addressed this issue. Godbehere, 783 P.2d at 879 n. 6